Ricky Allen LEE and Paul Vernon Rigsby, individually, and on behalf of all others similarly situated, Plaintiffs,

v.

ITT CORPORATION, an Indiana corporation, and ITT Federal Services International Corporation, a Delaware corporation, Defendants.

No. C10–0618–JCC.

United States District Court,
W.D. Washington,
at Seattle.

June 24, 2011.

Daniel E. Williams, William Harold Thomas, Boise, ID, for Plaintiffs.

David R. Goodnight, Jill Diane Bowman, Stoel Rives LLP, Seattle, WA, James C. Dale, Stoel Rives, Boise, ID, for Defendants.

## ORDER

JOHN C. COUGHENOUR, District Judge.

This matter comes before the Court on Plaintiffs' motion for class certification (Dkt. No. 36), Defendants' response (Dkt. No. 46), Plaintiffs' reply (Dkt. No. 50), and Defendants' surreply (Dkt. No. 53). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby denies the motion for the reasons explained herein.

## I. BACKGROUND

Defendant ITT Federal Services International Corporation (FSIC) is a wholly-owned subsidiary of Defendant ITT Corporation. (Dkt. No. 48 at 2.) On October 29, 2004, Defendant FSIC entered into a contract with the United States Government for General Maintenance and Supply Services (GMASS). (*Id.*) The GMASS contract required FSIC to provide maintenance and supply services to the United States Army in Kuwait. (*Id.*) Defendant FSIC used the human resources support of Defendant ITT to recruit qualified job applicants. (*Id.*) Individuals who passed

the job screening were offered employment by Defendant FSIC or by its wholly-owned subsidiary, ITT Federal Services International Limited (FSIL). (*Id.*)

From February 1, 2005, though May 29, 2010, Defendant FSIC and FSIL employed a total of approximately 2,650 individuals to perform the United States Army's maintenance and supply services in Kuwait. (*Id.* at 3.) The GMASS contract terminated on May 29, 2010. (*Id.*) Plaintiffs allege that Defendants breached their contracts with Plaintiffs by failing to pay overtime as required by Kuwaiti law and the contracts, by failing to pay for all hours worked, by failing to provide breaks as required by Kuwaiti law, and by failing to provide housing and meals at no cost. (Dkt. No. 1 at 7.) Plaintiffs seek to certify a class action against Defendants. (*See* Dkt. No. 36.)

## II. DISCUSSION

### A. Rule 23(a)

A class action may be maintained only if it meets all four criteria of Federal Rule of Civil Procedure 23(a) and falls into one of the three categories described in Rule 23(b). *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* —— U.S. ——, 130 S.Ct. 1431, 1437, 176 L.Ed.2d 311 (2010). Rule 23(a) requires a showing that

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

### 1. Numerosity

■ Defendants do not dispute that Plaintiffs satisfy this element. From February 1, 2005, through May 29, 2010, when the contract terminated, FSIC and FSIL employed approximately 2,650 individuals to perform the maintenance and supply services required by the U.S. Army in Kuwait. (Dkt.

No. 48 at 3.) The Court finds sufficient evidence that joinder of all members of the proposed class is impractical. Plaintiffs satisfy this element.

### 2. Common Questions of Law and Fact

■ "Commonality exists where class members' situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." *Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1172 (9th Cir.2010) (citation and quotations omitted). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* Defendants do not dispute that there are questions of law or fact common to the class. Plaintiffs have shown that there are common questions as to whether Defendants fully complied with their contractual obligations and Kuwaiti law in paying and providing benefits to Plaintiffs. (Dkt. No. 36 at 7.) Plaintiffs satisfy this element.

### 3. Typicality

■ "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured in the same course of conduct." *Wolin,* 617 F.3d at 1175 (citation and quotations omitted). "The typicality requirement is permissive and requires only that the representative's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez v. Hayes,* 591 F.3d 1105, 1124 (9th Cir.2010) (citation omitted). Class members have similar injuries, in that they allegedly did not receive overtime, holiday, or other pay and were not provided other benefits as required by their contracts and Kuwaiti law. (Dkt. No. 36 at 7.) Defendants do not dispute that the class members claim similar injuries. Plaintiffs satisfy the typicality requirement.

### 4. Adequacy

■ The issue of legal adequacy requires that two questions be addressed: "(a)

do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.),* 213 F.3d 454, 462 (9th Cir.2000). Plaintiffs and their counsel appear to be adequate representatives of the class. Defendants do not raise any objections to the adequacy of their representation. Plaintiffs satisfy this element.

## B. Rule 23(b) Requirements

In addition to satisfying all Rule 23(a) requirements, a class action must also satisfy one of the three categories under Rule 23(b). Plaintiff seeks certification under Rule 23(b)(3), or, alternatively, Plaintiff seeks "hybrid" certification under both Rule 23(b)(2) and Rule 23(b)(3). (Dkt. No. 36 at 9–13; Dkt. No. 50 at 10.)

### 1. Rule 23(b)(3)

Certification under Rule 23(b)(3) requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). The following factors are pertinent to this inquiry:

 (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

 (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

 (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

 (D) the likely difficulties in managing a class action.

*Id.*

#### a. Predominance

The predominance inquiry "focuses on the relationship between the common and individual issues and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Vinole v. Countrywide Home Loans, Inc.,* 571 F.3d 935, 944 (9th Cir.2009) (citation and quotations omitted). A "central concern of the Rule 23(b)(3) predominance test is whether adjudication of common issues will help achieve judicial economy." *Id.* Defendants allege that common issues do not predominate for a variety of reasons.

#### i. Differences in Class Members' Contracts

First, Defendants allege that Plaintiffs have not demonstrated that all of their contract claims are subject to generalized proof, because Plaintiffs have not shown that the putative class members' contracts are identical. (Dkt. No. 46 at 7.) To support its argument, Defendants point out that Plaintiff Lee's contract provides access to certain logistical support privileges, such as military dining facilities, while Plaintiff Rigsby's contract does not provide for such access. (*Id.*) The Court is not persuaded that such minor differences destroy predominance. Here, members of the putative class are linked by two significant operative facts: (1) they were all employees of Defendants in Kuwait; and (2) they were all allegedly entitled to receive certain pay and benefits from Defendants that they did not receive. Because these issues are applicable to the class as a whole, they are subject to generalized proof and predominate over issues requiring individualized proof. The issue is not whether the employees have the same contract, the issue is whether the different employment contracts required Defendants to provide certain pay and benefits to Plaintiffs which Defendants did not provide. Whether these employees are entitled to overtime pay and benefits under their individual contracts is central to this case and therefore predominates over tangential issues such as the amount of pay or benefits to which each employee is ultimately entitled.

It is possible that certain provisions that appear in some, but not all, class members' contracts might create divergent interests. However, the Ninth Circuit "does not favor denial of class certification on the basis of speculative conflicts." *Cummings v. Con-*

*nell,* 316 F.3d 886, 896 (9th Cir.2003). If these differences later appear significant, the Court can accommodate the divergent interests through the division of the above defined class into subclasses. Fed.R.Civ.P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *id.* 23(c)(5) ("When appropriate, a class may be divided into subclasses that are each treated as a class under this rule."); *see also Blackie v. Barrack,* 524 F.2d 891, 909 (9th Cir.1975) ("[Rule 23(c)(5) ] provides the mechanism of subsequent creation of subclasses ... to deal with latent conflicts which may surface as the suit progresses."); *Kohen v. Pac. Inv. Mgmt. Co. LLC,* 571 F.3d 672, 680 (7th Cir.2009) ("[T]he existence of such conflicts is hypothetical. If and when they become real, the district court can certify subclasses with separate representation of each."); *Harris v. Koenig,* 271 F.R.D. 383, 391 (D.D.C.2010) ("[I]n the event that ... a conflict does arise, the Court has discretion to consider creating sub-classes.").

### ii. Choice of Law

Plaintiffs seek to apply Washington law with respect to their claims for double damages, prejudgment interest, and attorneys' fees. (Dkt. No. 49–2 at 3.) Defendants assert that it would be unconstitutional for the Court to apply Washington law classwide and that the application of varying state laws would destroy predominance. (Dkt. No. 46 at 10–15.) However, the parties do not brief the Court on what law should apply if Washington law does not. The Court agrees with Defendants that the application of Washington law to the class as a whole would be inappropriate. However, since it is unclear what law should apply, the Court cannot conclude that common issues predominate.

"For a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Franchise Tax Bd. of Cal. v. Hyatt,* 538 U.S. 488, 494, 123 S.Ct. 1683, 155 L.Ed.2d 702 (2003) (citing *Phillips Petro-*

*leum Co. v. Shutts,* 472 U.S. 797, 818, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985)). To determine if the application of Washington law would violate the constitutional limitations on choice of law, the Court must first determine if Washington law conflicts in any material way with any other law which could apply. *See Shutts,* 472 U.S. at 816, 105 S.Ct. 2965.

The Revised Code of Washington Section 49.52.070 provides for the award of double damages when an employer "violate[s] any of the provisions of RCW 49.52.050(1) and (2)." However, Kuwaiti law does not allow for such double damages (Dkt. No. 47 at 2), nor does Colorado's wage law. *See* Colo.Rev.Stat. § 8–4–101 et seq. Additionally, states differ in their allowances of multiplied damages. Arizona, for example, provides for the discretionary award of treble damages, as opposed to Washington's mandatory award of double damages. *See* Ariz.Rev.Stat. § 23–355. Thus, Washington law conflicts with other laws which could potentially apply to the award of double damages.

Washington law regarding the availability and the amount of prejudgment interest also conflicts with Kuwaiti law and the laws of other states regarding prejudgment interest. *See Forbes v. Am. Bldg. Maint. Co. West,* 170 Wash.2d 157, 240 P.3d 790, 793 (2010) (allowing prejudgment interest that runs from the date the party was entitled to the money); Wash. Rev.Code 4.56.110 and 19.52.020 (awarding prejudgment interest under Washington law at the rate of 12 percent per annum); Colo.Rev.Stat. § 5–12–102(1) (awarding prejudgment interest at the rate of 8 percent per annum). Under Kuwaiti law, prejudgment interest would not be available because the parties did not provide for it in their contracts. (*See* Dkt. No. 47 at 2.) Washington law on prejudgment interest conflicts with other potentially applicable law.

The Revised Code of Washington provides for the award of attorneys' fees to an employee that succeeds in recovering owed wages or salaries. Wash. Rev.Code § 49.48.030. Kuwaiti law has no such provision. (*See* Dkt. No. 47 at 7.) Thus, Washington law conflicts with other law that could

potentially apply to the award of attorneys' fees.

Because Washington law materially conflicts with other potentially applicable laws regarding the award of double damages, prejudgment interest, and attorneys' fees, Washington must have a significant contact with each member's claims for the Court to apply Washington law. *See Shutts*, 472 U.S. at 821–22, 105 S.Ct. 2965. Out of the approximately 2,650 individuals employed by the GMASS project, only one percent (twenty-seven individuals) are Washington residents. (*See* Dkt. No. 48 at 3.) Defendants are not Washington corporations and do not have their principal places of business in Washington. (*See id.* at 1–2.) The contractual obligations were performed in Kuwait, with payment and services processed in Kuwait and Qatar. (*See id.* at 4.) There are no significant contacts with Washington for the claims of 99 percent of the purported class. The state of Washington does not have significant contacts with each member's claims, so the Court cannot apply Washington law to the class as a whole.

■ "Understanding which law will apply before making a predominance determination is important when there are variations in applicable state law." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir.2001). "Where the applicable law derives from the law of the 50 states, as opposed to a unitary federal cause of action, differences in state law will compound the disparities among class members from different states." *Id.* (internal citations and quotations omitted). A plaintiff seeking certification of a nationwide class "bears the burden of demonstrating a suitable and realistic plan for trial of the class claims." *Id.* Since the parties have not briefed the Court on what law should apply—just that Washington law does not apply to the class as a whole—the Court cannot make a determination at this time as to what law should apply to the claims for double damages, prejudgment interest, and attorneys' fees, and, thus, cannot make a predominance determination. Should the applicable law derive from a multitude of states, Plaintiffs must provide a suitable and realistic plan for the trial of these claims,

such as by grouping similar state laws together and applying them as a unit. *See Brady v. Conseco (In re Conseco Life Ins. Co. LifeTrend Ins. Sales and Mktg.)*, 270 F.R.D. 521, 529 (N.D.Cal.2010). However, until Plaintiffs establish what law should apply and provide the court with a manageable trial plan to adequately deal with the variances in state law, the Court cannot find that common issues predominate.

### iii. Statute of Limitations

■ Defendants allege that common issues do not predominate because Washington's six-year statute of limitations does not apply to 99 percent of the proposed class and other states' statutes of limitations vary widely. (Dkt. No. 46 at 16.) However, variations in statutes of limitations do not preclude class certification. *See Williams v. Sinclair*, 529 F.2d 1383, 1387 (9th Cir.1975) ("The existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones."); *see also Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir.2000) ("As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of statutes of limitations will not automatically foreclose class certification under Rule 23(b)(3).") Since common issues bind the class members together, the Court concludes that the variations in statutes of limitations do not preclude class certification under Rule 23(b)(3).

### b. Superiority

■ To certify a class, the Court must also find that the class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R.Civ.P. 23(b)(3). One factor to consider in the superiority inquiry is the likely difficulties in managing the class action. *See* Fed. R.Civ.P. 23(b)(3)(D). Since Plaintiffs do not address what law or laws apply and do not provide the Court with a suitable trial plan for dealing with any differences in state laws, the Court cannot conclude at this time that a class action is the superior method of dealing with the putative class's claims.

### 2. Hybrid Certification

 Plaintiffs alternatively seek hybrid certification under Rule 23(b)(2) and Rule 23(b)(3). (Dkt. No. 50 at 10.) As discussed above, Plaintiffs fail to satisfy the requirements of Rule 23(b)(3). Plaintiffs also fail to meet the Rule 23(b)(2) standard. Rule 23(b)(2) provides that a class action is appropriate if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declarative relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(2). Generally, claims for monetary relief may not be certified under Rule 23(b)(2) where the monetary relief is not incidental to the injunctive or declaratory relief. *Wal–Mart Stores, Inc. v. Dukes,* — U.S. ——, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). Claims for individualized relief, such as backpay, do not satisfy Rule 23(b)(2). *Id.* "Rule 23(b)(2) does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Id.* "Individualized monetary claims belong in Rule 23(b)(3)." *Id.*

The primary claims in this putative class action are claims for the award of individualized awards of monetary damages in the form of backpay and retroactive compensation for benefits. (*See* Dkt. No. 1 at 9.) Claims for such individualized relief cannot be certified under Rule 23(b)(2), but instead must be certified under Rule 23(b)(3). Accordingly, the Court denies hybrid certification of the class under Rule 23(b)(2) and Rule 23(b)(3).

### III. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' motion for class certification (Dkt. No. 36).