

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CHRISTOPHER CORCORAN, *et al.*, | No. 17-16996 |
| Plaintiffs-Appellants, | D.C. No. 4:15-cv-03504-YGR |
| v. | |
| CVS HEALTH CORPORATION and CVS PHARMACY, INC., | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Northern District of California
Yvonne Gonzalez Rogers, District Judge, Presiding

Argued and Submitted December 17, 2018
San Francisco, California

Before: CALLAHAN and N.R. SMITH, Circuit Judges, and OLGUIN,[**] District Judge.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Fernando M. Olguin, United States District Judge for the Central District of California, sitting by designation.

Plaintiffs filed a multi-state consumer putative class action against CVS Pharmacy, Inc. ("CVS"), alleging that CVS misrepresented the "usual and customary" ("U&C") prices of certain generic prescription drugs by not submitting the lower prices CVS charged to members of its Health Savings Pass ("HSP") program to third-party insurance providers ("TPPs") and pharmacy benefits managers ("PBMs").[1] The district court: granted in part plaintiffs' motion for class certification; granted CVS's motion to exclude and strike the expert opinion of plaintiffs' pharmaceutical economist, Professor Joel W. Hay; and granted CVS's motion for summary judgment. Plaintiffs appeal the district court's decisions. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse and remand.

1. We review the grant of summary judgment de novo. *See Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014). The district court erred in granting summary judgment to CVS, because, having found plaintiffs' evidence "relevant" but "inconsequential" or "unavailing," the district court nonetheless placed CVS's and plaintiffs' evidence on equal footing and impermissibly weighed the evidence and failed to credit and draw all reasonable inferences from the evidence in plaintiffs' favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations,

---

[1] Because the parties are familiar with the factual and procedural history of the case, we need not recount it in detail here.

the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," and "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

a. Plaintiffs argue that certain emails and presentations (that CVS produced) show that CVS employees had expressed concerns about whether CVS needed to report its HSP price as usual and customary, but the district court found that those materials failed to create a triable issue, because CVS did not misrepresent, based on the PBMs' testimony, the U&C price. We disagree. A jury weighs the evidence and determines whether CVS engaged in wrongful conduct in its reporting of U&C prices, which resulted in the PBMs calculating higher copayments. Contrary to CVS's assertion, plaintiffs need not produce evidence that the PBMs believed that CVS misrepresented the U&C price. It is enough for plaintiffs to show that CVS failed to report the HSP prices as U&C prices contrary to the PBM contracts, and that, as a result, plaintiffs were charged higher copayments.

b. CVS also argues that summary judgment was properly granted, because the testimony of the PBM witnesses established that the parties to the contracts agreed on the meaning of the U&C provisions. While the district court set forth the definitions of the U&C provisions contained in the relevant PBM agreements and noted that plaintiffs were relying on the language in those agreements, the district court did not discuss or explain

17-16996

why the contractual provisions, in conjunction with the evidence proffered by plaintiffs, were insufficient to raise a genuine issue of material fact. Instead, the district court noted that "[i]n some cases, the PBMs even amended the agreement to exclude explicitly membership programs from their definition of U&C." But this same evidence could show the opposite, *i.e.*, that the U&C definitions in the PBM contracts encompassed the HSP prices. A jury could reasonably infer that subsequent modifications of the agreements indicate that the prior definitions of U&C included HSP prices.

      c.     Although CVS and the PBMs agreed during this litigation (as opposed to when the agreements were negotiated) that the PBM contracts did not require CVS to submit its HSP prices as the U&C prices, plaintiffs proffered "some evidentiary support for [their] competing interpretation[] of the contract[s'] language." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). Given the extrinsic evidence proffered by plaintiffs to support their reasonable interpretation of the U&C language in the PBM contracts, the district court erred in granting summary

judgment.[2] *See, e.g.*, *First Nat'l. Mortg. Co. v. Fed. Realty Inv. Trust*, 631 F.3d 1058, 1067 (9th Cir. 2011) ("Where the interpretation of contractual language turns on a question of the credibility of conflicting extrinsic evidence, interpretation of the language is not solely a judicial function. As trier of fact, it is the jury's responsibility to resolve any conflict in the extrinsic evidence properly admitted to interpret the language of a contact." (emphasis omitted) (quoting *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912-13 (1998))).

2.    The district court narrowed plaintiffs' proposed classes by limiting each class to the PBM(s) in California, Florida, Illinois, and Massachusetts that adjudicated the respective class representative's claims based on Federal Rule of Civil Procedure 23(a)'s typicality requirement. The district court found that, since the evidence relating to one PBM does not necessarily apply to the other PBMs, typicality was lacking. We review the district court's class certification ruling for abuse of discretion. *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 984 (9th Cir. 2015); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("Under [Rule 23(a)]'s permissive

---

[2] In addition to key disputed factual questions relating to the interpretation of the agreements and whether CVS was obligated to report its HSP prices as the U&C prices, the evidence raises other related genuine issues of material fact such as: (1) whether the HSP program constitutes a "cash discount" program; (2) whether CVS offered HSP prices to uninsured customers who were not program members and whether the PBM witnesses were aware that CVS offered such prices to non-HSP members; and (3) whether plaintiffs are third-party beneficiaries of any of the PBM contracts.

standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.").

The district court abused its discretion in narrowing the proposed classes on typicality grounds. The named plaintiffs and the absent class members are insured customers who were charged copayments higher than the HSP prices, which plaintiffs maintain should have been CVS's actual U&C prices. As a result, the named plaintiffs were injured in the same manner as the absent class members and they suffered the same type of damages, *i.e.*, the delta between the actual copayment and the HSP price. Plaintiffs' action is not based on conduct that is unique to the named plaintiffs. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

While plaintiffs' motion for class certification focused on CVS's agreements with five PBMs, the alleged overall conduct or scheme was the same. That is, plaintiffs alleged that insured CVS customers were charged higher copayments as a result of CVS's failure to report its actual U&C prices in accordance with its agreements with the PBMs. The district court did not identify any meaningful differences in the PBM agreements that would result in the interests of the class representatives being misaligned with those of the absent class members. Indeed, CVS reported the same prices to the PBMs notwithstanding any variation in the language of the PBM contracts. In other words, CVS's actual reporting to the PBMs underscores the fact that the class representatives'

17-16996

claims are "reasonably coextensive," if not "substantially identical" to the claims of the absent class members. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017).

3.    We review the district court's decision to exclude and strike Dr. Hay's testimony for abuse of discretion. *Samuels v. Holland Am. Line-USA Inc.*, 656 F.3d 948, 952 (9th Cir. 2011); *see also Pyramid Tech., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 813 (9th Cir. 2014) (observing that the test for admissibility "is not the correctness of the expert's conclusions but the soundness of his methodology, and when an expert meets the threshold established by [Federal Rule of Evidence] 702, the expert may testify and the fact finder decides how much weight to give that testimony." (quoting *Primiano v. Cook*, 598 F.3d 558, 564-65 (9th Cir. 2010))).

The district court found that Dr. Hay's testimony lacked foundation, it excluded his report on that basis, and it struck Dr. Hay's testimony that CVS's HSP prices are the U&C prices as defined in CVS's contracts. We disagree that Dr. Hay's opinion lacks foundation. Based on our review of Dr. Hay's disclosed report and the record before us, it is apparent that Dr. Hay formed his opinion regarding the U&C price based on his experience, industry standards, and his review of the materials produced by CVS (including transactional data) during the course of the litigation. Dr. Hay's review of these materials provides an adequate basis for his disclosed testimony.

The district court also appears to have accepted CVS's argument that the conclusions that Dr. Hay disclosed in his report were not the product of sound or reliable methodology. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) ("[T]he importance of *Daubert*'s gatekeeping requirement . . . is to ensure the reliability and relevancy of expert testimony."). In part, this conclusion appears to be due to the fact that CVS's expert, Dr. Barlag, reviewed much of the same transaction level data as Dr. Hay and disagreed with Dr. Hay's analysis and conclusions. However, Dr. Barlag's analysis doesn't show Dr. Hay's analysis to be without foundation or the product of questionable or unreliable methodology; if credited, Dr. Barlag's testimony does little more than cast some doubt on Dr. Hay's conclusions. Resolving the conflict between these experts is a matter for the jury, not a basis to exclude one of them under Rule 702. *See Pyramid Tech., Inc.*, 752 F.3d at 813.

We therefore reverse the district court's summary judgment order, its class certification order, and its order excluding the expert opinion and striking the expert report of Dr. Hay. We remand for further proceedings. The parties shall bear their own costs on appeal.

**REVERSED and REMANDED**.